## Staunton.

### DUNLAP v. DILLARD & McCORKLE, &c.

### SAME v. KARN & HICKSON.

#### October 18th, 1883.

1. ATTACHMENTS—*Vacation order—Construction of statutes.*—The power given any circuit judge in vacation, under the act of 28th February, 1866, amending Code 1860, ch. 151, § 6 (see Code 1873, ch. 148, § 6), to quash or dismiss an attachment, conflicts not with and repeals not any other provision of that chapter, and was intended to give the defendant a speedy and summary remedy where he has a clear defence; and to have the attachment quashed or dismissed if, in the opinion of the judge, it was sued out without sufficient cause.

2. IDEM—*Idem—Idem.*—The judgment in vacation, under said § 6, refusing to quash or dismiss the attachment, is not final, and does not supersede the defendant's right to make defense, at the trial in term, against the attachment in any respect, under §§ 21, 22 and 23 of said chapter.

3. IDEM—*Order for delivery.*—The court's order for the defendant's delivery of the attached and replevied property to the sheriff, should be reasonable as to the time and place of such delivery.

Two cases heard together—on writs of error to two judgments of the circuit court of Amherst county rendered 13th October, 1882, in the suits of Dillard and McCorkle against Thomas Dunlap, and of Karn and Hickson against same—on attachments issued second and fifth August, 1882, by a justice on the application of the plaintiffs, respectively, on the ground that said Dunlap intended to remove his effects out of this state, so that there would probably not be therein sufficient to satisfy the plaintiffs' respective claims should only the ordinary process of law be used to obtain judgments. The attachments were

levied on more than twenty-three hundred tons of iron ore, a steam engine and other property, then at a distance of over fifteen miles from Amherst Courthouse. Shortly afterwards, in vacation, the defendant, on consent of the parties, moved the circuit judge of said county, to quash the attachments on the ground that the same had been sued out without sufficient cause. Upon hearing of the motion, upon examination of witnesses, the circuit judge overruled the motion.

At ensuing term of said court, on 13th October, 1882, the cases being up for trial, the defendant appeared, and sought to contest and defend the attachments upon the ground that they had been improperly sued out without sufficient cause; and to put the defence on record, tendered a plea, "that he, the defendant, did not intend to remove his effects out of the state of Virginia, so that there would not probably be therein effects of said Dunlap sufficient to satisfy the claims of the plaintiffs, when judgment is obtained therefor, should only the ordinary process of law be used to obtain such judgments." To the filing of this plea, the plaintiffs objected. The court sustained the objection on the ground that the question whether the attachments were issued upon false suggestions, or without sufficient cause, had already been tried and determined, and that the order and judgment in vacation overruling, the defendants' motion to quash the attachments, was an adjudication of the question of the right to sue out the same, which *could not again be adjudicated or enquired into in any form of pleading or proof.* The court gave judgment for the plaintiffs for their claims which were on negotiable notes to which no plea was offered, and made the further order that it appearing that the property levied on, had been replevied, the defendant deliver the same to the sheriff on the third Monday in November thereafter, at Amherst Courthouse, and that the sheriff sell it and out of the proceeds pay the judgments of the plaintiffs and the costs.

To this judgment, which was the same in both cases, Thomas Dunlap applied to and obtained from this court, a writ of error.

*Thomas Whitehead, Robert Whitehead, John B. Robertson,* and *Lawrence S. Marye,* for the plaintiff in error.

*John W. Daniel,* and *W. W. Larkin,* for the defendants in error.

The statute law applicable to the question at issue is contained in the Code, chapter 148, section 6 and section 22. An attachment against the effects of a debtor lies, in Virginia, in a variety of cases, against residents and non-residents, upon claims due and to become due, in actions of contract and in actions of tort, under the circumstances defined and limited by the statute. Prior to 1866, the defendant had no recourse save to await patiently the term of the court to which it was returnable. But in 1866 this evil was corrected by the general assembly. See Acts of 1866, chapter 56, page 170. And now the question arises, What is the force and effect of the sixth section as amended?

Just so soon now as any attachment is issued, the defendant has a right to proceed to procure its dismissal, after giving ten days' notice of his motion to the plaintiff. Any of the material grounds relied on as the basis of the attachment may be traversed in the motion to quash. Section 3, chapter 148; Daniel on Attachments, page 190. The motion being duly made by the defendant to quash or dismiss the attachment on any of the appropriate grounds according to the nature of the case, and the court being convened in vacation to hear and determine it, *"the judge may hear testimony upon the question,"* and under section 8, chapter 163 of the Code, "on a motion *when an issue of fact is joined, and either party desire it,* or when, in the opinion of the court, it is proper a jury shall be empanelled, unless the case be one in which the recovery is limited to an amount not greater than twenty dollars, exclusive of interest." See *Clafflin* v. *Steinbock,* 18 Gratt. 842.

Thus the whole matter as to "the sufficiency of the cause of

attachment" may be fully investigated, witnesses being summoned, testimony adduced, a jury empanelled, if either party desire it, or the court deem it proper, and "*the issue of fact*" raised—*i e.,* "*the sufficiency of the cause of attachment*" being adjudicated, the court then, in pursuance of the finding on the issue joined, "*may quash or dismiss the attachment.*"

The effect of the adjudication is simply this: The issue tried becomes *res judicata*—"a fact adjudicated"—that is to say, if the court, upon the trial of the motion, determines that there was insufficient cause for the attachment, such insufficiency of cause becomes by such determination an ascertained adjudicated fact; and, *eo converso,* if the court determines that there was "sufficient cause" of attachment, that becomes an ascertained judicial fact in like manner. There may be a new trial, indeed, if ground exist for a new trial according to the principles which govern new trials. There may be an appeal taken at once, if there be ground for the assignment of error. But the "adjudicated fact" remains a fact incapable of being questioned after the adjudication, save in the direct proceeding for new trial, or by appeal, as the case may be.

"If no party, entitled to make defence, has made a motion to quash the attachment in vacation, a motion may be made to quash it before the court to which the writ is returnable, or in which the suit is pending." Daniel on Attachment, section 184.

The right to "contest the attachment" given by section twenty-two, chapter one hundred and forty-eight, is a right that cannot be exercised continuously and repeatedly by the defendant according to his pleasure. When exercised, and when "the contest" is determined, it is done with; and it matters not *when* the contest occurs, when it *does* occur it carries with it all the force and effect of a contest ended.

Says section twenty-two: "The right to sue out any such attachment may be contested; and when the court is of opinion that it was issued on false suggestions, or without sufficient cause, judgment shall be entered that the attachment be abated."

Section six, chapter one hundred and forty-eight, simply gives the right to the defendant to make this "contest" in vacation, without waiting for a term of court; and whenever he makes it he can have a jury empanelled if he desire it, or leave the issue of fact raised to be determined by the judge, according to his (the defendant's) preference.

It is urged that when the contest is made in vacation the judgment entered is simply interlocutory, and that thereafter, when term time comes, the court may reopen the question which it has determined; call again for the witnesses, and go again through the trial. No authority is cited for this view.

The judgment of the circuit court, rendered in vacation in these cases, determined but one fact applicable to each of them— *i. e.*, that the defendant below, "the said Thomas Dunlap, intended to remove his effects out of this state, so that there will probably not be therein sufficient effects of the said Thomas Dunlap to satisfy the claims of the plaintiff," as set forth in the affidavits of the plaintiffs. When the motion of Dunlap was made to quash the attachments, the only question that was, or could be, considered by the court was, whether or not these suggestions were true or false; and the burden of proof was on the plaintiffs, Dillard & McCorkle and Karn & Hickson, to establish their verity. This they did, and, "*upon the examination of witnesses,*" as stated in the judgment of the court, it was so ruled and adjudicated.

It remained to be determined by the court, in term, whether or not the claims of the plaintiffs were valid. They were evidenced by negotiable notes of Dunlap. Not disputing these notes in any particular, the defendant, Dunlap, renewed his motion to quash the attachments in the form of a plea, alleging and saying that "he, the said defendant, Dunlap, did not intend to remove his effects out of the state of Virginia, so that there would not probably be therein effects of the said Dunlap sufficient to satisfy the claim of the plaintiffs when judgment is obtained therefor, should only the ordinary process of law be

used to obtain such judgment, and of this he puts himself on the country."

Thus it will be seen that the only fact brought in issue by the plea was the predetermined fact which had been investigated by the court, with witnesses to enlighten its judgment. And the vain argument is made that it was error in the court not to listen to the twice-told tale, and not to try over again the issue that it had solemnly heard and settled.

Once, and once only, can any issue of fact be tried in any of the tribunals of the common law, whether they be courts of law or courts of equity, unless, on proper grounds a new trial be granted. This is a fundamental principle.

We challenge and defy the production of any precedent to the contrary. To hold otherwise is to reflect upon the administration of justice, and to deride the courts, upon the presumption that they commit error; reverse the presumption in favor of judicial proceedings contained in the maxim, "*omnia præsumuntur solemniter et rite esse acta*"; encourage litigation, and vex the litigant by repeated trials and costs, and violate the simplest and most obvious rules of common sense, propriety and justice, embodied in the maxims, "*Nemo debet bis vexari pro una et eadem causa; res judicata pro veritate accipitur,*" and "*interest Reipublicæ ut sit finis litium.*" See Broom's Legal Maxims, 249, 250, 252 and 256, and authorities there cited; *Schlemmer* v. *Myerstein,* 19 Howard P. R. 412; Drake on Attachments, 406 a.

LACY, J., delivered the opinion of the court.

The first question to be passed on is the exception to the ruling of the court in refusing to allow the defendant to contest the right to sue out the attachment, upon the trial of the case, upon the ground that the question had been adjudicated by the court in the vacation order refusing to quash the attachment.

The question is, what is the construction and force to be given to the amendment to the sixth section enacted by the general

assembly in 1866, to be found in the Acts of 1865–6, page one hundred and seventy, which is as follows:

" The judge of the circuit court to which any attachment may be made returnable, *or any other circuit court judge,* may, ·in vacation, upon ten days' notice to the attaching creditor, hear testimony upon the question, and if of opinion that the attachment was sued out without sufficient cause, may quash or dismiss the attachment." This is added as an amendment to the sixth section, which otherwise provides to whom the attachment shall be *directed* and where *returnable;* the following section, provides how the attachment shall be executed, the eighth and ninth sections following provide for the details as to executing and seizing the property.

The twenty-first and twenty-second sections provide, what defense, and by whom defense may be made. The twenty-second section ·providing for the trial of the case, declares, "The right to sue out any such attachment may be contested; and when the court is of opinion that it was issued on false suggestions, or without sufficient cause, judgment shall be entered that the attachment be abated; when the attachment is properly sued out, and the case heard, upon its merits, if the court be of opinion that the claim is not established *final* judgment shall be given for the defendant. In either case, he shall recover his costs, and there shall be an order for the restoration to him of the attached effects."

The twenty-third section and others following, provide for such cases as judgment is for the plaintiff at the trial.

Before the act of 1866, when an attachment had been sued out before a justice of the peace, however unreasonable or unfounded the claim of the attaching creditor, that the debtor was removing his property, or intending to remove his property out of the state, the attached effects were obliged to remain tied up in the hands of the sheriff until the trial in *court,* which, in many instances, might be long delayed, unless the debtor gave a replevy bond with security.

That this might and did often work hardship and injustice, experience soon showed plainly enough; the legislature, without amending the sections concerning *final* trial and judgment, amended the section providing for the direction and return of the attachment so that, though returned to the court in term or some rule day thereof, there should be a speedy method by which obvious and patent injustice might be remedied, and the right was given, upon ten days' notice, to apply to the judge of that court to which the attachment was to be returned, or some *other circuit judge* in vacation, who was granted the power therein given. And what was that? *to hear evidence,* and if of opinion that the attachment was sued out without sufficient cause, *to quash or dismiss the attachment,* and if not of such opinion, do what? The sole power is granted to dismiss the extraordinary remedy sought, and leave the plaintiff to the ordinary remedy provided by law for the collection of his debt. But however great the apparent urgency of the plaintiff's case, whatever gravity might surround the situation, the said judge in vacation could do nothing for the plaintiff except refuse to interfere. If he shall be of opinion that the attachment was sued out without sufficient cause, he may quash it; if he is not of that opinion, he leaves the whole subject to the action of the court at its next session, to be then tried under the twenty-second section, which provides that the right to sue out any such attachment may be contested, and when the court is of opinion that it was issued on false suggestions or without sufficient cause, judgment shall be entered that the attachment be abated. When the attachment is properly sued out and the case heard upon its merits, if the court be of opinion that the claim of the plaintiff is not established, *final* judgment shall be given for the defendant. In either case, he shall recover his costs, and there shall be an order for the *restoration to him of the attached effects.*

In the sixth section there is no direction as to the restoration of the attached effects, and it may be observed that this pro-

vision of the sixth section is placed in the law in advance of any provision for the execution of the attachment, or its levy upon or seizure of any property in the contemplation of the law as soon as the attachment was sued out, the defendant should have a summary way open to him for relief, equally speedy and summary, as the remedy itself is as to the plaintiff. The defendant may then ask, before he has been put to further annoyance, that the attachment, if purely vexatious, that is, is sued out without sufficient cause, may be quashed or dismissed. If he has a plain and clear defence the matter ends at once, but if his motion is overruled, he goes to court, how? To have his case tried under the attachment law, under the twenty-second section, and that authorizes him to contest the suing out of the attachment.

The summary remedy in vacation could not have been intended to supersede the trial, in any respect, which was to be had in court, except in so far as it expressly gives the power to the judge to dismiss the attachment. That it was not intended to supersede the trial, is evident when we observe that it does not give the judge in vacation any authority to grant relief to the plaintiff. The parties in such a case would be entitled to a jury to try the questions involved therein; a motion before a judge, in vacation, any judge of any circuit court, might, under some circumstances, preclude a jury; we think the law could not have intended to supersede the trial of the case by this vacation motion and order, further than in the limited sense hereinbefore stated. The provision in the sixth section is not in conflict with any other provision of the law, and does not repeal any other provision, and the provisions of the law providing for the trial of the case remain in full force when the trial comes on.

In the case of *Talbot* v. *Pierce*, decided by the court of appeals of Kentucky, in the year 1853, and reported in 14th Ben. Monroe's Reports, the court had this case before it in the same form in which it comes up in this court in this case, when Judge Marshall, delivering the unanimous opinion of that court, said: "It is sufficient to say that in whatever stage of the proceeding

it becomes important to determine whether the facts upon which the attachment rests are true or false, the denial of the defendant in his answer will throw the burden of proof on the party sustaining the attachment."

"We add," says Judge Marshall, "that in our opinion the circuit court, notwithstanding its refusal to discharge an attachment on motion, may, without additional evidence, discharge it on final hearing; and this court has a right to revise and reverse, or affirm the final judgment, discharging or enforcing the attachment."

And we are of opinion the circuit court erred in overruling the motion of the defendant at the trial, to be allowed to contest the attachment on the ground that it had been sued out upon false suggestions and without sufficient cause, in whatever proper form it was made, whether by plea or otherwise, it was a plain statutory right of which the court had no power to deprive the defendant.

We are further of opinion that the court erred in requiring the iron ore levied on in the suit, to be removed to Amherst Courthouse, in its delivery to the sheriff. The time and place to be fixed by the court in its judgment should be reasonable, and it is error for the court to prescribe an impossible delivery as to place and time, in order to compel a forfeiture of the forthcoming bond.

For the foregoing reasons, we are of opinion that the judgment of the circuit court complained of is erroneous, and must be reversed and annulled, and the cause remanded to the said circuit court for a trial to be had therein in accordance with the foregoing opinion.

Which is ordered to be certified to the said circuit court of Amherst county.

The judgment is as follows:

This day came again the parties by their counsel, and the

court having maturely considered the transcript of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the circuit court erred in refusing to allow the defendant to file his plea at the trial and contest the suing out of the attachment, upon the ground that it was issued upon false suggestions and without sufficient cause, notwithstanding the vacation order of the judge therein, and in rendering judgment against the defendant, the plaintiff in error. It is, therefore, considered by the court that the said judgment be reversed and annulled, with costs in favor of the appellant, and the defendant be granted a new trial.

JUDGMENTS REVERSED.